STATE, RESPONDENT, *v.* FISHER, APPELLANT.

[No. 1,421.]

[Submitted January 2, 1900. Decided February 7, 1900.]

*Criminal Law—Homicide—Testimony of Accomplice—Corroboration—Instructions—Degrees of Offense—Burden of Proof—Oral Instructions—Evidence of Good Character— Oral Instructions After Submission—Advising Acquittal— Coercing Agreement of Jury—Compulsion as a Defense.*

1. Where the defendant's own testimony in itself, and without the aid of the testimony of an alleged accomplice, tends to connect the defendant with the commission of the crime, such testimony is in law a sufficient corroboration of the alleged accomplice.

2. Where the jury might have found from the evidence that an alleged accomplice was not an accomplice, a conviction can be rightly had upon his uncorroborated testimony.

3. Where the proof of defendant's guilt is wholly circumstantial, and the evidence warrants a conviction of murder in either first or second degree, it is reversible error for the court to withhold from the consideration of the jury murder of the second degree, and instruct the jury that the defendant "is either guilty of murder in the first degree or he is not guilty at all."

4. Under Penal Code, Section 2081, upon a trial for murder, the commission of the homicide by the defendant being proved, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable, the crime is presumed to be murder of the second degree, and the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon the defendant,—if he would reduce the crime to manslaughter, there must be produced evidence sufficient to create a reasonable doubt of the existence of malice.

5. Since Penal Code, Section 2070, commands the court to charge the jury in writing, and forbids oral comments upon the instructions, unless by agreement of both the state and the accused, mere silence of the accused or his counsel is not equivalent to a consent to the giving of oral instructions.

6. The provisions of Penal Code, Section 2070, requiring written instructions, and forbidding oral comments on the instructions unless by agreement of both the state and the accused, are mandatory, and the violation thereof is reversible error.

7. Under Penal Code, Section 2070, a charge is oral if not in writing at the time of its delivery and read to the jury as written,—and the same is true of the information mentioned in Penal Code, Section 2123, and the giving of any such oral instructions or comments on the instructions is prejudicial error, even though they be taken down in short hand by the official stenographic reporter who is required by Code of Civil Procedure, Section 371, "to take full notes of all the proceedings at the trial."

8. Where defendant's affidavit for a continuance stated that certain witnesses, if present, would testify to his good character, and the state admitted the fact that they would so testify, it was a reversible error for the court to charge in writing that good character "if proved by competent evidence" always goes to the defendant's credit, and when the jury returned for further instructions as to their right to consider his past life, to instruct them orally to the effect that they could consider nothing outside of the testimony given on the witness stand, but that the defendant's failure to produce the depositions of his witnesses should not prejudice the jury against him, although the charge on the subject when the case was submitted was otherwise correct.

9. On a trial for murder, it is improper for the court to direct the attention of the jury to the expense incident to a new trial as the reason why they should reach a verdict.

10. If a trial judge is of the opinion that the defendant, if convicted, should be granted a new trial because of the insufficiency of the evidence, it is his duty to advise the jury to return a verdict of not guilty.

11. On a trial for murder, where the jury informed the court that there was no prospect of an agreement on a verdict, it was reversible error for the judge to remark: "Feeling as I do about the matter, I do not see any reason why a jury should disagree in the matter, * * * although I do not care to force any man, against his conscience, to agree to a verdict which he does not believe in. * * * Feeling as I do about the case, * * * I do not feel that I should discharge you,"—since such remark was calculated to impress on the jury that the verdict should be one of guilty.

12. If the evidence discloses that defendant was commanded to commit the homicide by one who threatened to take defendant's life if he refused, and, believing the threat would be executed, to save his own life, he killed the deceased, who was, when slain, a mile distant from the place where the threat was made, then defendant is guilty of a deliberate murder.

*Appeal from District Court, Fergus County; Dudley Du Bose, Judge.*

James Eli Fisher was convicted of murder. From a judgment and an order denying a new trial he appeals. Reversed.

*Mr. Wm. M. Blackford, Messrs. Stranahan & Stranahan, Mr. William H. De Witt, and Mr. T. Bailey Lee,* for Appellant.

*Mr. C. B. Nolan, Attorney General,* for the State.

With reference to the statements of the court objected to and alleged by the appellant to be oral instructions and *per se* error, we submit that a proper construction of Sec. 371 of the Code of Civil Procedure providing for stenographers who shall take full notes of all the proceedings given or had at the trial, together with the section (1080 Code C. P.) directing that the court shall instruct the jury in writing, make the laws of our state substantially as the California law with reference to oral instructions, that is, permitting them to be given when taken down by the stenographer. (*State* v. *Preston,* 38 Pac. Rep., 694.)

Did it not cease to be an oral charge, if part of the charge at all, when it was taken down by the stenographer? The court offered to let the jury have the charge written if the defendant's counsel asked for it, but he sat silent and did not make the request.

The jury itself did not ask for it, therefore its absence was certainly not prejudicial to the defendant and could not have influenced their verdict. (*People* v. *Cockran*, 61 Cal., 552.)

It has also been held that a failure to charge in writing, although required by the statute to do so even though it be erroneous, is no ground for reversal where no prejudice could have resulted to the appellant therefrom. ( *Com.* v. *Barry*, 11 Allen (Mass.) 263; *Greathouse* v. *Summerfield*, 25 Ills. App., 296; *Walsh* v. *St. Louis Drayage Co.*, 4 Mo., 339; *Hogell* v. *Lindell*, 10 Mo., 484.)

In *Com.* v. *Barry*, Bigelow, C. J., of Massachusetts, said: "It is not the province of the defendant to assert or maintain a rule of law where the omission to observe it has been the cause of no injustice to him."

Besides, in *People* v. *Leary*, 39 Pac. Rep., 24, which was a case where the stenographer was not present when the jury returned into court, in a murder case, for further instruction; and consequently cannot be urged to have been decided on account of the permission given under the California statute to instruct the court orally when the same is taken down by the stenographer, the court held that *as nothing whatever was said to the jury except what in substance and more in detail had been told them before in the charge of the court*, that there was no violation of the provisions of the California law requiring the charge of the court to be in writing or taken down by the official reporter.

And at all events "by agreement of both parties" oral instructions can be given. (Section 2070, Penal Code; 11—A. & E. E. Prac. & Pr., 261.)

Defendant's counsel was silent and thereby gave his consent, and as suggested by the trial court in overruling the motion for a new trial, "The day is past in criminal procedure when counsel for the defendant can sit silent and then take advantage of his silence."

Silence raises a presumption that consent has been given. (Bouvier's Law Dict., I-400; and *consensus tollit errorem.*)

There was no coercion of a verdict in this case. The court

simply suggested that the case was an expensive one for the county to try, and was not a case where he thought the jury ought to disagree. He was entirely fair, saying that they should either acquit the defendant or find him guilty, and was particularly careful in saying to them, "I don't care to force any man against his conscience to agree to a verdict which he does not believe in. * * *" (*Horman* v. *State*, 70 Wis., 456; *Douglas* v. *State*, 4 Wis., 393; *State* v. *Gorman*, 67 Vt. 365.)

And we submit that the law is well established that the court may urge to the jury as reasons for agreeing on a verdict the time and expense involved in the trial, and the time and expense that a new trial will entail, without it being error. (*Allen* v. *Woodson*, 50 Ga., 63; *East Tenn. Ry. Co.* v. *Winters*, 85 Tenn., 240; *Pierce* v. *Rehfuss*, 35 Mich., 53; *Kelly* v. *Emory*, 75 Mich., 147; *Clinton* v. *Howard*, 42 Conn., 310; *Frandson* v. *Chicago Ry. Co.*, 36 Iowa, 372; *State* v. *Gorman*, 67 Vt., 371; *State* v. *Hormon*, 70 Wis., 448.)

The trial judge is vested with large discretion in the conduct of judicial proceedings, and he may properly admonish the jury as to the desirability and importance of agreeing on a verdict, and may urge them to make every effort to do so consistent with their conscience. (11—Encyl. Pl. and Pr., 304, and cases cited; *German Savings Bank* v. *Citizens Nat'l Bank*, 63 Am. State Rep., 399.)

It is usually for the interest of both parties, or at least should be, that when a case has been fairly tried and submitted upon the merits to a jury that they should agree. The court, in urging the jury to agree, was but acting in the performance of a highly commendable duty, and an examination of the case of *People* v. *Kindleberger*, 100 Cal., 368, on which appellant relies, will demonstrate that there the court held that the "remarks of the judge could not fail to create the impression that he thought the jury ought to convict upon the evidence before them, * * * and that unless it appears that it could not have been so understood we cannot say that the charge was without prejudice to the defendant."

In this case, however, the court did not make any remark that could possibly create the impression that he thought the jury ought to convict the defendant, but simply urged them to agree ''as to the guilt or *innocence* of the defendant,'' and we submit this is not error.

MR. JUSTICE PIGOTT delivered the opinion of the Court.

James Eli Fisher, accused of the murder of one John Allen, and convicted of murder of the first degree, has appealed from the judgment imposing death and from the order denying his motion for a new trial.

1. That the evidence is not sufficient to sustain the verdict is one of the assignments upon which the defendant asks for a reversal. It is argued that the corroboration of the alleged accomplice, James Calder, was not such as the law requires. Upon this point it is enough to say that there are many items of evidence which in themselves, and without the aid of the testimony of James Calder, tended to connect the defendant with the commission of the crime,—indeed, parts of his own testimony have such tendency; and, secondly, the jury might have found from the evidence that James Calder was not an accomplice in the murder of Allen, in which event a conviction could rightly be had upon the uncorroborated testimony of this witness, who deposed to facts from which the jury might have reasonably deduced every inference necessary to establish the guilt of the defendant.

2. The court instructed the jury that the defendant ''is either guilty of murder in the first degree or is not guilty at all,'' and withheld from their consideration murder of the second degree and manslaughter. The evidence tending to prove that the defendant, with his own hands, killed Allen, is wholly circumstantial or indirect, as defined by section 3109 of the Code of Civil Procedure: ''Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. For example, a witness proves an

admission of the party to the fact in dispute.  This proves a
fact, from which the fact in dispute is inferred.''  No witness
testified that he saw the decedent slain.   In this respect the
evidence is wholly indirect.   James Calder swore that one
William Wallace Calder commanded the defendant to go and
kill Allen, who was about a mile away from the place where
the command was given; that the defendant, carrying a rifle,
went in the direction of Allen; that in a few minutes the re-
port of the discharge of a gun was heard; and that when the
defendant returned he informed the witness that he had killed
Allen, whose dead body was found immediately thereafter,
lying in his own blood, with a bullet hole through the skull.
The defendant testified that William Wallace Calder said he
(William) was going to kill Allen, that defendant and James
Calder a short time afterwards heard the report of a gun,
and when William returned he said he had shot and killed
Allen.   The jury were not bound to believe James Calder.
They were at liberty to believe all, a part, or none of his tes-
timony connecting the defendant with the perpetration of the
crime.   If they did not believe any of it, there was, neverthe-
less, as the record shows, sufficient evidence remaining to
warrant the jury in finding the defendant guilty of murder in
either degree.   Even if all the testimony of James Calder
were accepted as true, still the inference to be drawn there-
from is not necessarily that the murder was deliberate; in
other words, the testimony of James Calder, if true, does not
require the inference that the murder was deliberate, nor does
the law deduce such presumption.   What occurred at the
time Allen was killed, and the state of the defendant's mind,
were to be found by the jury from the evidence.   If all the
testimony of James Calder be disregarded, there would be
sufficient evidence remaining to warrant a verdict of guilty of
murder with or without the element of deliberation.   As was
said in *State* v. *Calder, ante* p. 504, 59 Pac., 904:  ''Where
the proof of guilt on a trial for deliberate murder is to be de-
duced from circumstantial evidence alone, the court should
ordinarily, and perhaps always, charge the jury as to murder

of the first and second degrees, and should also charge as to manslaughter whenever there is any evidence tending to negative the presence of malice; for in such cases the circumstances may permit of inferences tending to show the commission of different grades of felonious homicide. If the killing was unlawful only, manslaughter is the crime; add to the element of unlawfulness malice aforethought only, and murder of the second degree is the crime; and, lastly, add deliberation to unlawfulness and malice aforethought, and murder of the first degree is the crime. Even in cases depending for proof of guilt largely or chiefly upon direct evidence, the omission to instruct with respect to murder of the second degree is a dangerous practice, and would in most cases constitute error sufficient to reverse a judgment convicting the defendant of the higher crime; the reason being that the question of fact of whether or not the element of deliberation was present is, save in very exceptional cases, to be determined not by the court, but by the jury.''

Section 2081 of the Penal Code provides: ''Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'' In such cases the presumptions to be deduced and the inferences to be drawn depend upon the application of recognized principles of law to the evidence. The state having proved the killing by the defendant without evidence tending to show that the act amounts to manslaughter, or that the defendant is justifiable or excusable, the crime is presumed to be murder of the second degree. If the state would raise the crime to murder of the first degree, the burden is upon it to prove deliberation; on the other hand, if the defendant would reduce the crime to manslaughter, there must be produced evidence sufficient to create a reasonable doubt of the existence of malice. If, from the evidence, the jury believe the

killing was unlawful, and with malice aforethought, the de-
duction is murder of the second degree; if the murder was
deliberate, the deduction is of the first degree of that crime;
and if they believe that the killing was unlawful, but without
malice, the deduction is manslaughter.   Where the evidence
shows conclusively that the defendant either committed mur-
der or did not do the killing, then the jury ought to find the
defendant guilty of murder or acquit him altogether; and the
court does not err in so charging.   In the case at bar the court
should have instructed the jury upon both degrees of murder.
There was, however, no evidence, direct or indirect, tending
to reduce the felonious homicide to manslaughter; hence an
instruction upon that crime was unnecessary.

The present differs from the *Calder* case in many respects.
For example, there was not sufficient evidence, aside from the
testimony of the accomplice, who was an eyewitness of the
murder, to sustain a conviction of any grade of homicide; if
his testimony was true, the defendant was guilty of deliberate
murder, and, upon being sufficiently corroborated, the jury
should have so found; if false, he should have been acquitted
of any grade of homicide.

3.   The court charged the jury in writing, and they retired
to consider of their verdict.   On the evening of the same day
—March 29, 1899—the jury returned into court, and the fol-
lowing oral remarks were made by the judge (addressing
counsel for the defendant):   "Mr. Blackford, if you desire
what I say to the jury shall be transcribed by the stenographer
afterwards, and taken to them as an instruction, I am per-
fectly willing to have it done; if you demand it, it will be
transcribed;" to which no response was made.   Judge (ad-
dressing jury):   "You can speak through your foreman, gen-
tlemen.   The sheriff telephoned me that you desired to see the
oath that you took.   What is the object of that, to begin
with?"   Foreman:   "There seems to be some—I won't say
misunderstanding—but there seems to be a doubt in some of
their minds whether we have a right to go outside of the evi-
dence in drawing conclusions in this case,—whether we have

a right— I hardly know how to express myself.'' Judge: ''Whether you can consider circumstances not proven in this evidence?'' Foreman: ''Yes, sir.'' Judge: ''No. Your oath is, as soon as the jury is completed, and so forth, the following: 'That they and each of them will well and truly try the matter in issue between the plaintiff and defendant, and a true verdict render according to the evidence.' It is your duty, gentlemen, to take the evidence, and view it in the light of the instructions given you by the court; but, if any member of your jury knows anything outside of what has been testified here, he has no right to use that in arriving at his verdict. Is that what you mean,—some ulterior fact? or do you mean to apply common knowledge to the facts already proven by the testimony? Of course, in judging the testimony, you must use your common sense, but, for instance, suppose that one of the jurymen knew something which had not been proven against his man (not that I know that there is anything against him; this is only an illustration, gentlemen), and he would use that in saying that he ought to be convicted, or knew something good in favor of him, and therefore said that he ought to be acquitted, that would be going outside of the testimony in arriving at a verdict.'' Foreman: ''We have no right to consider this man Fisher's past life? We know nothing of it, and we have no right to draw any conclusions?'' Judge: ''No more than as derived from the testimony as the court has given you the charge with regard to the testimony. What weight you shall give that is a question for you gentlemen to decide. In other words, you have no right to consider his past life in considering his testimony, any more than is developed by the testimony at this trial.'' Foreman: ''We are to take the evidence as we hear it on the stand? We have no right to consider anything else?'' Judge: ''No; if you believe that testimony, you have no right to take anything else. You can disregard that testimony, or believe it, as you see fit; it is a question with you. You may disbelieve any witness, but, as the court has instructed you before, the presumption is that the witness is telling the truth always, But

you can't take anything outside of the testimony given before you upon the witness stand. You can believe any part of that testimony, or disbelieve any part of it, with the presumption as the court has instructed you in the former instruction. Now, do you understand, gentlemen, that you are the sole judges of anybody's testimony that is given upon the stand? and whether you shall believe them or disbelieve them is a question which the court has nothing in the world to do with, and it is left for you twelve gentlemen to decide; and what weight, in that connection with the question that the foreman asked me, that you shall give the affidavit of the defendant as to what certain witnesses will swear to, as the court has instructed you before, is a question for you to decide. You may give it great weight, or give it no weight. The court has nothing to do with it.'' Foreman: ''But the fact that the defendant hasn't these depositions that he speaks of should not prejudice us against him at all?'' Judge: ''No.'' Foreman: ''I think that is all.'' Judge: ''Well, gentlemen, you can retire. It is a question of the testimony here in the whole case. You should consider the circumstances surrounding everything in this matter, and decide it. The court cannot decide any question of fact,—tell you who you ought to believe, and who you ought not to believe,—because that is strictly your province, and the law says that you must decide it, and not the court. You can retire.'' On the afternoon of the next day the jury again appeared, and the following colloquy occurred: Judge: ''Gentlemen of the jury, have you agreed upon a verdict?'' Foreman: ''We have not.'' Judge: ''Did you desire to see the court, Mr. Foreman?'' Foreman: ''We wished to make a statement that it is— There is no prospect that we can agree.'' Judge: ''This is a case, gentlemen, that is an expensive case for the county to try, and it is not a case where I think a jury ought to disagree in. They either ought to find this man guilty of murder in the first degree, or they ought to find him not guilty. Feeling as I do about the matter, I do not see any reason why a jury should disagree in the matter, and put the county to a large

expense, although I don't care to force any man against his conscience to agree to a verdict which he does not believe in. Nevertheless, if he can be persuaded by talking with his fellow jurors as to the guilt or innocence of this defendant, so that they all may agree, I should much prefer it. Of course, it is no pleasure for me to keep the jury together, nor have I any desire to inflict punishment upon men who are simply doing their duty as citizens of the county; but at the same time it is as much my duty to see that there is a verdict, if possible, in this case, as it is your duty to conscientiously consider the matter before you. Feeling as I do about the case, as I have stated, I do not feel that I should discharge you. So you can retire, gentlemen, and I will be here at any time if you desire further instructions upon the matter, or you arrive at a verdict. Before you gentlemen retire, is there any question that seems to be bothering you that you desire any further instructions upon as to the law than the court gave you yesterday?" Foreman: "Not that I know of." Judge: "You can retire, gentlemen." On March 31st the jury again appeared in court, this time at the request of the judge, who told them that the case was so important that he did not feel justified in discharging them at that time, saying, also, that he desired no juror to be forced to a conclusion except by legitimate argument and discussion. On the same day the jury found the defendant guilty.

None of the remarks made on any of the three occasions were reduced to writing. All were taken in shorthand by the stenographer, but were not extended until after the verdict was returned. The defendant excepted to the action of the court, and assigns error thereon. Subdivision 5 of section 2070 of the Penal Code prescribes that the court must charge the jury as provided in subdivisions 7, 8, and 9 of section 1080 of the Code of Civil Procedure, which declares that the court shall charge the jury in writing. Subdivision 6 of section 2070, *supra*, also prescribes that the court must not "in any case make any oral comments to the jury on the instructions, unless by agreement of both parties. All instruc-

tions given and refused must be filed among the papers of the case." Section 1085 of the Code of Civil Procedure, which is applicable to civil cases only, provides that if, after the jury have retired to deliberate, there be a disagreement among them as to the testimony, or they desire to be informed of any point of law, the information must be given in writing or taken down by the stenographer; whereas section 2123 of the Penal Code provides that such information, when required in a criminal action, must be given in the presence of the county attorney and the defendant and his counsel, omitting the provision contained in section 1085, *supra*, that the information must be given in writing or taken down by the stenographer, and leaving that matter to be regulated by subdivisions 5 and 6 of section 2070, *supra*, of the Penal Code. The attorney general contends that the silence of counsel for the defendant when the judge offered to have what he was about to say transcribed thereafter and taken to the jury as an instruction was an agreement or assent to the offer made on March 29th. Not so. From silence assent to a proposed course may often be inferred in fact or presumed in law; but it never should be so inferred or presumed unless the person or party remains silent when he ought to speak. Were it provided that the instructions and the comments thereon may be oral unless the defendant asks that they be reduced to writing, then, manifestly, oral instructions and comments would be proper, if not objected to because unwritten, and a failure to make seasonable objection would constitute assent, or, rather, would be a waiver of the right to complain thereafter. But by section 2070, *supra*, the court is commanded to charge the jury in writing, and is forbidden to make oral comments upon the instructions, unless by agreement of both the state and the defendant. This provision requires expression to be given to the assent of the defendant, and his mere silence, or that of his counsel, may not be taken as evidence of the consent. Duty did not demand objection; no legal obligation rested upon the defendant to speak; on the contrary, the court, if it would orally instruct the jury or

make oral comment upon the charge already given, was under obligation to secure the consent or agreement of the defendant thereto. The judge may not create or impose such a duty by saying (in effect) to counsel for the defendant: "I. purpose giving oral instructions and making oral comments upon the charge already given. If you desire my remarks to be transcribed hereafter by the stenograper, and taken to the jury, I am perfectly willing to have it done. The statute forbids oral instructions and prohibits my making any oral comments on the written charge, unless by your consent. Now, if you do not express objection, I shall consider your silence as consent." Consent to an oral charge, or to any modification of or comment thereon, may not be inferred from the silence of the defendant or his counsel. That such is the rule seems clear; it is supported by many cases, a few of which we cite: *People* v. *Chares*, 26 Cal., 78; *People* v. *Kearney*, 43 Cal., 384; *People* v. *Prospero*, 44 Cal., 186; *People* v. *Hersey*, 53 Cal., 574; *People* v. *Bonds*, 1 Nev., 33.

Subdivisions 5 and 6 of section 2070, *supra*, requiring the charge of the court in a criminal action to be in writing, and prohibiting oral comments on instructions unless by agreement of the parties, are mandatory, and a violation of them constitutes error. Did the court either give the jury oral instructions or make oral comments upon the charge, the statements having been taken down in shorthand by the stenographic reporter? The attorney general insists that when section 371 of the Code of Civil Procedure, which provides that the official stenographer shall take full notes of all the proceedings at the trial, is considered as supplementing sections 2070 and 2123, *supra*, the statutes of Montana are, in substance, the same as those of California relating to oral instructions, and should be interpreted as are the latter. We do not agree with him, nor with the holding of the supreme court of Idaho upon this question in *State* v. *Preston*, 38 Pac., 694. In subdivision 6 of section 1093 of the present Penal Code of California is the following provision: "If the charge be not given in writing, it must be taken down by the

phonographic reporter," which recognizes a distinction be-
tween a written charge and one merely taken in shorthand by
the stenographer.   The charge is oral if not in writing,  even
though it be taken down  by  the  stenographer.   Such oral
charge, when so taken down, is permitted  by  the  statute of
California, but there is no similar statute of Montana.   The
assertion that a charge not in writing  becomes  written when
phonographically reported as the words fall from  the  lips of
the judge,  carries its own  refutation.   The plain intent of
subdivisions 5 and 6 of section 2070, *supra*, is to require that
the charge must be in writing at the time of its delivery, and
must be read to the jury as written, thus insuring its preser-
vation as given to the jury; and so, for like reason,  with the
information mentioned in section 2123.   The fallibility of
stenographic reporters is probably another  reason  why the
legislative assembly of this state has not as yet  provided  that
the notes of the stenographer may take the place of a written
charge.   The statute was probably intended also as a means
conducive to great care and  caution  in  framing  the  instruc-
tions,—elements not always attending  the  giving  of those
which are unwritten.

In the oral instructions and comments by the judge,  the
court committed error prejudicial to the defendant:   Before
the trial the defendant had applied for a continuance in order
to obtain depositions, setting forth in his affidavit that certain
witnesses, if present, would testify that his general reputation
and character for morality was good in the community of his
residence, and the state admitted at the trial that the witnes-
ses, if present, would so testify.   In the written charge in
respect to this matter the law was correctly declared, except
in the following clause:   "The fact that a man, prior to the
alleged commission of a crime, has had a good character, if
you believe that he has proven by competent evidence that he
has had a good character in the neighborhood in which he
lives, always goes to his credit."   The court is the judge of
the competency of the evidence, the jury of its weight.   This
error may have tended to raise in the minds of the jurors the

question of whether the evidence which the state admitted would have been given if the witnesses were present and testifying was competent to prove character. This appears from the question asked by the foreman, the jury desiring to know whether they had the right to consider the defendant's previous life: "We have no right to consider this man Fisher's past life? We know nothing of it, and we have no right to draw any conclusions?" "We are to take the evidence as we hear it on the stand? We have no right to consider anything else?" In answering, the judge said: "No. . * * * But you can't take anything outside of the testimony given before you upon the witness stand. * * * Now, do you understand, gentlemen, that you are the sole judges of anybody's testimony that is given upon the stand? * * * and what weight, in that connection with the question that the foreman asked me, that you shall give the affidavit of the defendant as to what certain witnesses will swear to, as the court has instructed you before, is a question for you to decide. You may give it great weight, or give it no weight. The court has nothing to do with it." Foreman: "But the fact that the defendant hasn't these depositions that he speaks of should not prejudice us against him at all?" The judge answered, "No." By these remarks the jury were misdirected. They were bound to accept the affidavit of the defendant as true, it was not to be weighed by the jury; the affidavit stated that certain witnesses, if present, would testify to good character, and the state admitted such to be the fact. In considering the question of the defendant's guilt, and as bearing upon it, the weight to be given (not to the affidavit of the defendant, but) to the evidence of good character, was for the jury. When the judge told the jury that they must consider nothing outside of the testimony given before them upon the witness stand, and that the defendant's failure to produce the depositions of the character witnesses should not prejudice the jury against him, the error was emphasized. True, the written charge, with the exception already pointed out, contained a correct and sufficiently full statement of the law upon the sub-

ject, but the oral instructions and comments were repugnant to the charge.

The oral statements of the judge made to the jury on the second day after their retirement contained the following, in answer to the remark of the foreman that there was no prospect of an agreement: ''This is a case, gentlemen, that is an expensive case for the county to try, and it is not a case where the jury ought to disagree in. They either ought to find this man guilty of murder in the first degree, or they ought to find him not guilty. Feeling as I do about the matter, I do not see any reason why a jury should disagree in the matter, and put the county to a large expense, although I don't care to force any man against his conscience to agree to a verdict which he does not believe in. * * * Feeling as I do about the case, as I have stated, I do not feel that I should discharge you.'' The judge should not have addressed the jury as he did. It was improper for him to direct the attention of the jury to the expense incident to a new trial as a reason why they should reach a verdict. Whether this, of itself, requires a reversal, we do not decide. The more serious error lies in the intimation that the judge believed the defendant guilty. If he believed that the evidence was not of sufficient weight to sustain a verdict, the manifest duty of the court was to advise an acquittal,—in other words, if the judge was of the opinion that the defendant, if convicted, should be granted a new trial because of the insufficiency of the evidence, the jury should have been advised to return a verdict of not guilty. (Section 2096, Penal Code; *State* v. *Welch*, 22 Mont., 99, 55 Pac. 927.) If, in the opinion of the judge, the evidence was sufficient to warrant the submission of the case to the jury, the weight of the evidence was not for him to determine. It seems clear, also, that by the impromptu oral charge and comments the jury were given to understand that the judge entertained no doubt of the verdict which ought to be rendered, and the trend of his remarks was certainly calculated to impress the jury that, in his opinion, the verdict should be one of guilty. His opinion upon

the weight of the evidence and the guilt of the defendant was not expressed in direct language, but it was implied. We think the correct rule is announced in *People* v. *Kindleberger*, 100 Cal., 368, 34 Pac., 853: "When, upon the trial of a defendant, the evidence is clearly insufficient to justify a verdict of guilty, it is the duty of the judge to so inform the jury, and to advise a verdict of acquittal. This power is sometimes exercised by courts, and is one so frequently invoked in the trial of criminal cases that its existence may be regarded as a matter of common knowledge upon the part of jurors of ordinary intelligence and experience; and this fact is not to be lost sight of in considering the impression likely to have been made upon the jury by the charge of the judge in this case. To any one knowing that it is the duty of the court to advise an acquittal if the evidence is such that, in the opinion of the judge, twelve honest men would have no right to convict him, the remarks of the judge in this case could not fail to create the impression that he thought the jury ought to convict upon the evidence before them. But it is not necessary that we should be able to say that the jury must have so understood the charge. Unless it appears that it could not have been so understood, we cannot say that the charge was without prejudice to the defendant. The court has no right, except when advising an acquittal, to give any expression of its opinion as to the weight of evidence, or to tell the jury that the evidence is so clear that they, as honest men, ought not to disagree, which is, in effect, the same as telling them that there is no conflict in the evidence, and that, as honest men, they can render but one verdict."

4. As the cause must be remanded for a new trial, we notice the only other question which is of importance. It is earnestly insisted that there was evidence tending to prove that the defendant was commanded to kill Allen by William Wallace Calder, who threatened to take the life of the defendant if he refused; and that the defendant, believing that Calder would execute his threat, to save his own life killed Allen, who was, when slain, a mile distant from Calder and from the

place where the threat was last made.  If the evidence disclosed that the defendant killed Allen under these circumstances, then, at the common law, he would have been, and by the statutes of this state he is, guilty of a deliberate murder.  (*Arp* v. *State*, 97 Ala., 5, 38 Am. St. Rep., 137, 12 South., 301, 19 L. R. A., 357; *People* v. *Repke*, 103 Mich., 459, 61 N. W., 861; *Regina* v. *Tyler*, 8 Car. & P., 616; section 30, subdivision 8 of the Penal Code.)  The instructions touching this phase of the case and kindred matters were, to say the least, as liberal toward the defendant as any that could be given without misdirection in his favor.

The judgment and the order denying the motion for a new trial are reversed, and the cause is remanded.

*Reversed and remanded.*

