THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.*
CLARA THOMAS AND ROBERT G. THOMAS, DEFENDANTS
AND RESPONDENTS.

No. 10949.
Submitted February 7, 1966. Decided March 16, 1966.
Rehearing denied April 27, 1966.
413 P.2d 315.

See also 143 Mont. 543, 393 P.2d 39.

Robert H. Wilson, County Atty. (argued), Hardin, J. H. Mc-Alear, Red Lodge, Forrest H. Anderson, Atty. Gen., Louis Forsell, Sp. Asst. Atty Gen. (argued), Helena, for appellant.

Bert W. Kronmiller (argued), Douglas Y. Freeman (argued), Hardin, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the State of Montana from an order entered in the District Court of Big Horn County granting new and separate trials for both Clara Thomas and Robert Thomas, husband and wife, who were each convicted of murder in the second degree.

The trial jury, acting under direction of the trial court, acquitted a third defendant, David Thomas, son of Clara and Robert Thomas, of the crime of homicide.

The State specifies three errors—that the court erred in granting Clara Thomas's motion for a new trial; Robert Thomas's motion for a new trial; and, in ordering separate trials for each of said defendants.

The memorandum of the trial court, accompanying its order granting new and separate trials, states as reasons for such order the following: that there was insufficient evidence to prove a conspiracy between the three defendants; that there was no direct evidence disproving Clara Thomas's statement that she, and she alone, shot Frank Tschirgi, her brother; that there was no circumstantial evidence sufficient to implicate Robert Thomas in the homicide; that the jury, in passing on the effect of the evidence, did not distinguish between the parties where some evidence was admissible as against only one of the defendants; that it was prejudicial error not to charge the jury with manslaughter instructions under the facts presented in court; that there is sufficient newly-discovered evi-

dence to require a retrial of the case; that affidavits of some of the jurors casts doubt upon the question of whether the verdict as rendered was the true verdict of *all* the jury.

The case pivots upon the following written statement made by Clara Thomas to the sheriff and the county attorney from her hospital bed two days after discovery of the crime.

"Sheridan Memorial Hospital, Sheridan, Wyoming, March 13, 1963.

"My name is Clara Thomas. I am 46 years of age and am married to Robert Thomas of Wyola, Montana. Sheriff Roy Riley and County Attorney Robert H. Wilson, both of whom I know have asked me if I would like to make a statement concerning my brother's death on Sunday evening. They have told me that I do not have to make a statement if I do not want to, that I have the right to have a lawyer represent me and that anything I say in this statement could be used against me in a court of law. I understand this and want to make the following statement as to what happened last Sunday night.

"Bub came over to the house to get his dog and he asked me to come over to Dad's house because we could go there were [sic] we wouldn't be interrupted. He said he wanted to talk to me.

"Then I went over to Dad's house, but he wasn't there yet. So I waited in the living room. He was very angry and he said 'What the hell do you think you are doing with Kronmiller?'

"Then he went into a tirade and he was cursing Dad and screaming that it was his outfit. That Dad had known that he needed the Scott money for debts on the ranch and that Dad was going to double cross him and go with David and that he and his mother knew they had to do something about it before Twilla and David and I got back. He said he had worked there all his life for meat and potatoes and that nobody was going to take it away from him.

"I knew that he was very much out of control and I got up to leave. He pushed me into my mother's bedroom. I had

found David's pistol in my mother's house that day and had intended to take it home but I had just left it on mother's dresser.

"While he was talking and raving he was walking around and he had gone into the dining room and gotten Dad's rifle. I don't know where he got it. It was in a scabbard and he took it out when he was walking and talking.

"When he was talking he said 'I must kill you too.' He said this a couple of times and then he pushed me into my mother's bedroom. My mother's dresser is right by the door. The pistol was on that. He was coming at me with the rifle and again he said 'I must kill you too.' I remember reaching for the pistol and I told him 'You must leave me alone.' I was standing in the little hallway outside the bedroom door.

"I remember firing the pistol at him but I don't know how many times. He fell sort of sideways. I think I dropped the pistol at his feet. I looked at him and I knew he was dead. I loved him very much.

"It was quite dark when we were in mother's house and we hadn't turned the lights on in the house.

"I ran home to tell Bob and he wasn't there. Then I took some pills that my mother had and that I had taken over to my house after her death. I don't know how many I took.

"Mr. Wilson has read this statement to me and it is just the way it happened. I don't want to add anything or change anything. Sheriff Riley has been here all the time we have been talking. My husband has just come in. I have read this statement and I sign it freely, voluntarily and of my own will.

"We have just been talking about how far Bub was from me when I shot. He was quite close and coming at me. If I fired a second shot he would have closer [sic] than when a first shot was fired.

"Witnessed at 7:45 o'clock P. M., March 13, 1963."

At the trial, Clara Thomas re-read the above statement and affirmed it in all parts except for the statement concerning her age, which she amended.

There were no eyewitnesses to the killing, save for defendant Clara Thomas. The State's case was based entirely upon circumstantial evidence directed toward refusing the above statement by Clara Thomas, and the statements made by Robert and David Thomas concerning their whereabouts on the evening of March 10, 1963.

The evidence and testimony show that Robert and David Thomas left their house on the Tschirgi ranch early in the afternoon to look for elk; that, finding none, they drove to the ranch airport and viewed the country through binoculars until it was quite dark; that upon their return to the ranch it was pitch dark; that they put gasoline in their automobile preparatory to its use the following day; that they went into their home and noticed Clara Thomas apparently asleep on a sofa; that they decided not to awaken her and proceeded into the kitchen to prepare something to eat; that shortly after finishing eating and perhaps within 45 minutes to an hour after they arrived at the house they attempted to awaken Clara; that they could not awaken her and realized that she was unconscious; that they carried her to the car and drove her to the Sheridan, Wyoming hospital.

Hospital records show Clara was admitted at 9:50 P. M., Sunday, March 10, 1963. She was released from the hospital March 14, 1963.

Evidence introduced by the State tends to show that at least two persons saw Frank Tschirgi on the ranch, alive, after the time Clara states that she shot him; that sunset on March 10, 1963 was at 6:13 P. M.; that Clara could not have shot Frank Tschirgi in the manner or from the location that she described; that the pistol was not in the house as and where she claims it was; that F. B. I. inspection of the weapons found at the scene of the killing revealed absolutely no trace of fingerprints, either on the rifle, the pistol or the clip inside the pistol; that Frank Tschirgi was shot twice—once through the heart and once through the aorta blood vessel in close proximity to the

heart; that the shots were fired from a distance of less than six inches; that Clara Thomas had absolutely no knowledge of rifles or pistols and did not know how to handle or operate them; that Frank Tschirgi was a right-handed man; that the rifle found lying across Frank Tschirgi's body was lying in such a position as to indicate a left-handed man had held it.

The defendants were charged in the information with murder in the first degree. The verdict acquitted David Thomas and found Clara Thomas and Robert Thomas each guilty of murder in the second degree.

It should be noted that one phase of this matter was previously before us in State of Montana ex rel. Wilson, County Attorney v. District Court, 143 Mont. 543, 393 P.2d 39. That was an original proceeding wherein the relator County Attorney sought a writ of prohibition to prohibit the district judge from proceeding further in the instant case of State of Montana v. Thomas on the ground that the district judge had been disqualified under the statute, R.C.M.1947, § 94-6913. As disclosed by the fact statement in that opinion, the motion for new trial had been filed and prior to a hearing thereon the county attorney filed an affidavit of disqualification, giving as his reason that the district judge was biased and prejudiced. We there held that a disqualification could only be had before trial or re-trial after appeal, denied the requested writ and returned the matter to the district court for further proceedings.

Grades of homicide are concisely distinguished in State v. Calder, 23 Mont. 504, 521, 59 P. 903, 909:

"If the killing was unlawful only, manslaughter is the crime; add to the element of unlawfulness malice aforethought only, and murder of the second degree is the crime; and, lastly, add deliberation to unlawfulness and malice aforethought, and murder of the first degree is the crime."

In State v. Shadwell, 26 Mont. 52, 59, 66 P. 508, 510, this court said:

"Manslaughter is not a degree of murder, although it is a

grade of criminal homicide. The elements necessary to constitute the crime of manslaughter are included in the crime of murder, but, as we have said, manslaughter is not a degree of murder."

In 1 Wharton's Criminal Law & Procedure, § 271, p. 574, it is stated:

"Manslaughter is unlawful homicide without malice aforethought, either express or implied. The element of malice aforethought must be absent or the homicide will by definition be murder."

The defendants claim the trial court committed prejudicial error in refusing to charge the jury on the law of manslaughter. The trial judge agreed with this contention and ordered new and separate trials.

It is a fundamental rule that the court's instructions should cover every issue or theory having support in the evidence.

"Thus, on the trial of an indictment for murder, the court is required to instruct not only as to that offense, but also as to all the inferior degrees of homicide—upon the lower degrees of murder that may be included in the crime charged and upon manslaughter—to which the evidence is properly applicable and of which the jury would be warranted in finding the accused guilty * * *." 26 Am.Jur. Homicide, § 554, p. 543. State v. Park, 88 Mont. 21, 289 P. 1037; State v. Mumford, 69 Mont. 424, 222 P. 447; State v. Fisher, 23 Mont. 540, 59 P. 919.

In 4 Warren on Homicide, § 346, p. 440, it is stated:

"Where there was no eyewitness to the killing, except the defendant, instructions on voluntary manslaughter are warranted. Where the defendant testifies to provocation and the evidence for the state is circumstantial, the court should charge on manslaughter." See also 41 C.J.S. Homicide § 389(b), p. 202. "Any evidence, however slight, which shows that the homicide was committed under such circumstances as to eliminate the element of malice, requires a charge on the law of manslaughter." 4 Warren on Homicide, § 346, p. 430.

332

In State v. Calder, supra, 23 Mont. at 520, 59 P. at 909, and as affirmed in State v. Fisher, supra, this court said:

"Where the proof of guilt on a trial for deliberate murder is to be deduced from circumstantial evidence alone, the court should ordinarily, and perhaps always, charge the jury as to murder of the first and second degrees, and should also charge as to manslaughter whenever there is any evidence tending to negative the presence of malice; for in such cases the circumstances may permit of inferences tending to show the commission of different grades of felonious homicide."

The existence of malice aforethought was put in issue by defendant Clara Thomas's written statement and by her testimony from the witness stand. She often stated that she loved her brother very much and bore no ill feeling toward him whatsoever, even when he was abusive toward her. Her testimony tends to "eliminate" or "negative" the presence of malice aforethought. Malice aforethought, its presence serving as the steppingstone between manslaughter and murder of the second degree, should have been presented to the jury as such, with its importance signaled, in the court's instructions, the same being put at issue by the evidence in the case.

The same reasoning, of course, applies to defendant Robert Thomas.

The defendant Clara Thomas attempted to justify the killing of her brother, Frank Tschirgi, on the theory of self-defense.

"On trial for murder, the evidence may be such as to justify an instruction on manslaughter and also on self defense, such defenses not being necessarily inconsistent." 4 Warren on Homicide, § 338, p. 235. To same effect see 41 C.J.S. Homicide § 395, p. 229.

In State v. Shadwell, supra, 26 Mont. at pages 58-60, 66 P. at page 510, this court stated:

"* * * Whenever the evidence warrants it, the duty of the court is to instruct the jury upon every offense included in the crime charged. * * *

"* * * That the defendant contended that he acted in self-defense, and therefore that the homicide was justifiable, did not make it the duty of the jury to convict of murder or acquit altogether. If, from the evidence, they believed him guilty of manslaughter, they should have so found, notwithstanding his plea of self-defense. The mere fact that the defendant insisted, by evidence or otherwise, that he was justified in the killing, could not relieve the court and jury of considering the crime of manslaughter, when there was evidence tending to prove its commission."

For the above reasons, we concur with the view of the trial court that it erred in not charging the jury on manslaughter, and, such error being prejudicial to each defendant, affirm the trial court's order granting new trials for Clara Thomas and Robert Thomas. We further refuse to interfere with the trial court's discretionary determination that a fair trial for each demands separate trials for each. See R.C.M. 1947 § 94-7205.

We have not discussed the other reasons given by the trial court in its memorandum because in our view no purpose would be served.

In view of the fact that this trial lasted a month and produced such a large volume of testimony, exhibits, offered testimony and offered exhibits, we have chosen not to comment further. We are not to be understood as either approving or disapproving any of it or the procedures, nor that any part of it becomes the law of the case on retrial. The issues will necessarily have to be retried in their entirety as to each charge and each defendant.

The order of the district court is affirmed.

MR. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.