THE STATE OF MONTANA, Plaintiff and Respondent, v. EDITH OPAL EISENMAN, a/k/a/ Opal Eisenman, Defendant and Appellant.

No. 11769.
Submitted May 11, 1970.
Decided July 21, 1970.
472 P.2d 857.

Francis J. McCarvel, Glendive, John McCarvel argued, Great Falls, for appellant.

Robert L. Woodahl, Atty. Gen., J. C. Weingartner, Asst. Atty. Gen., appeared, Helena, H. James Oleson, County Atty., argued, Kalispell, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of second degree murder entered on a verdict of guilty by a jury.

At approximately midnight on December 25, 1968, Gordon Eisenman died as a result of gunshot wounds. Opal Eisenman, his wife, defendant herein, called the Evergreen Fire Department in Kalispell, Montana, and an ambulance was dispatched to the Eisenman residence at 357 Eighth Avenue East North.

The Kalispell city police were notified, through the intercom from the fire department, that a shooting had occurred at said residence; the ambulance and the police patrol car arrived at the residence at approximately the same time. Chuck Hathaway, the ambulance driver, and Robert Sevier, a city policeman, knocked at the door of the residence and were admitted by defendant. They found the deceased lying on the floor midway between the living room and dining room. Sheriff-Coroner Ross Wilson and Chief of Police Ted Waggener were then called to the scene. It was then determined the sheriff should assume command of the investigation since the residence was just outside the city limits of the city of Kalispell.

The sheriff found a .22 caliber pistol, the barrel lying against an electrical outlet with the butt resting on the floor in the dining room. On clearing the gun, the sheriff noted eight empty cartridges and one live cartridge. The live cartridge contained approximately one hundred small pellets each of which was about the size of the head of a pin. The sheriff took a paraffin glove test of the defendant's hands at that time, which test was forwarded to the FBI laboratory for testing; the FBI reported the test was negative as to nitrate powder or gas.

The sheriff did not arrest the defendant immediately; he allowed her to go to a neighbor's house. He returned twice to the residence, the scene of the shooting. On his last return he found the defendant with the neighbors going through papers. Some of the evidence at the scene had been cleaned up and disturbed.

Insofar as the issues on this appeal are concerned, as will be set out later, the defendant's case is of importance.

Defendant testified that on the afternoon of December 25th she and her husband had visited friends at Kila, a short distance from Kalispell, they then returned to Kalispell and went to the Stockholm Bar. After having a few drinks Gordon Eisenman purchased a fifth of Seagrams, and they then went to visit the Tom McDevitt residence, arriving there around 10:00 p.m. There they had two drinks each from the fifth Gordon had purchased and after visiting they returned home, arriving at approximately 11:30 p.m.

Defendant testified that upon arriving home she took off her coat and went down to the basement to start the furnace. She returned upstairs to get some matches and saw her husband standing between the stove and the kitchen table facing the back door and waving the gun in the air. Upon returning to the basement, she testified, she thought "Oh Lord, what is he doing with that gun at this hour!" So she returned upstairs and started fighting and wrestling with her husband to secure possession of the gun. In the struggle her husband received five wounds, from which he died.

Dr. Bernard Winter performed an autopsy the afternoon of December 26, 1968. He testified as to the wounds as follows: The first wound "A" was below the right nipple. He determined by a pencil probe it had proceeded down at a 45 degree angle and lodged near the liver. Wound "B" was near the left nipple, likewise at a 45 degree angle, and in the same plane as wound "A", and went through the left lung and imbedded itself in the apex of the right ventricle. Wound "C" went in a horizontal direction on the inner aspect of the right thigh, involving only soft tissue. Wound "D" was a soft tissue wound, in the same plane and direction as wound "C" and was on the lateral aaspect of the left thigh. Wound "E" was a superficial wound 1½ inches in length about 4 or 5 inches under the left armpit on the posterior aspect of the left side. Its direction was up and down from the horizontal. Wounds "A" and "B" were fatal wounds. Wounds "C", "D" aand "E" were superficial

wounds and would not have affected the decedent's mobility. Both Dr. Bernard Winter and George A. Burley, the FBI ballistics expert, testified all of the wounds were inflicted by the gun at contact or near contact range, that is, that the muzzle of the gun was approximately one inch or less from the decedent when fired.

Defendant was charged with murder in the second degree. She pled not guilty. In conformance with the provisions of section 95-1803(d), R.C.M., defendant furnished to the prosecution and filed with the clerk of court a staatement of intention to interpose the defense of self-defense and did furnish to the prosecution and file with the clerk of court the names and addresses of all witnesses to be called by the defense in support thereof. The court refused to instruct the jury on the issue of self-defense or justifiable homicide.

The jury found defendant guilty of murder in the second degree and she was sentenced to serve ten years in the state prison. Defendant appeals from this judgment of conviction and sentence.

The issues for review are whether the trial court erred in refusing to give the defendant's proposed instructions numbered 1, 2, 4, 5, 6, 9, and 11, 12. All of the instructions offered and refused deal specifically with self-defense and justifiable homicide.

The appellant's entire appeal is predicated on the evidence as to whether she acted as she did in self-defense, to protect her husband from doing fatal injury to himself, or from doing injury to the home and property. Appellant cites State v. Thomas, 147 Mont. 325, 413 P.2d 315 and State v. Porter, 143 Mont. 528, 391 P.2d 704, for the proposition that it is a fundamental rule that the court's instructions should cover every issue or theory having support in the evidence. Appellant argues there is evidence fairly tending to support the theories of self-defense and/or justifiable homicide. Thus, appellant argues, there was error in refusing the instructions.

The trial court did instruct in Instruction No. 31 that:

"You are instructed the killing of a human being is excusable and not unlawful:

"1. When committed by accident or misfortune in doing any lawful act by lawful means and without any unlawful intent and where the person causing the death acted with that care and caution which would be exercised by the ordinarily careful and prudent individual under like circumstances.

"2. When committed by accident or misfortune in the heat of passion upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon is used, and when the killing is not done in a cruel or unusual manner.

"Excusable homicide is distinguished from felonious homicide in that to be excusable the killing of the human being must have been by either accident or misfortune. Even though the death was accidental and may not have been intended and was not anticipated, the homicide will not be excused if it was caused by an unlawful act, or by the doing of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

In Instruction No. 32 the jury was instructed:

"If the homicide appears to be excusable, the person charged must, upon his trial, be fully acquitted and discharged."

It is apparent, then, the jury could have found the killing of Eisenman excusable.

Actually, in analyzing the testimony of the defense, rather than self-defense upon which all the claimed error in refusal to instruct is predicated, the testimony, when taken with the exhibits and other circumstances, is on a theory of excusable homicide resulting from accident or misfortune.

According to appellant's own version, she saw her husband waving a gun in their home and looking "goofy". She testified that she tried to disarm him and in the ensuing scuffle

and wrestling match, he was shot five times! At best she was claiming accidental shooting. She never claimed that she shot in defense of anything. There simply is no evidence supporting a self-defense theory.

In State v. Brooks, 150 Mont. 399, 436 P.2d 91, this Court dealt with the same issue. We said:

"Under Montana law if a homicide is to be justified by self-defense there must be evidence that the party killing acted under the influence of a reasonable fear that someone was going to be murdered or seriously injured. R.C.M.1947, §§ 94-2513, 94-2514; State v. Jennings, 96 Mont. 80, 28 P.2d 448, 121 A.L.R. 375; State v. Fine, 90 Mont. 311, 2 P.2d 1016. In this case there is no evidence whatever that the defendant acted under a reasonable apprehension of death or great bodily harm. The witnesses for the State gave no indication that the defendant did the killing in fear nor did the defendant himself claim that he acted under any fear of harm.

"Instructions must have relation to the facts given in a particular case. State v. Evans, 60 Mont. 367, 199 P. 440. Although instructions may state a correct principle of law, if they are not based upon or in conformity with the issues or facts raised or supported by the evidence they ought not to be given. State v. Smith, 57 Mont. 563, 190 P. 107; State v. Mitten, 36 Mont. 376, 92 P. 969. In this case Judge McClernan was correct in refusing to instruct on self-defense."

Just as in the *Brooks* case, here there is no evidence to support the theory of self-defense. Since the court did instruct on excusable homicide as heretofore shown, the jury could have found the killing of Mr. Eisenman excusable. They did not.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and HASWELL, concur.