THE STATE OF MONTANA, Plaintiff and Respondent, v.
FRED ROLLINS, Defendant and Appellant.

No. 11241.
Submitted May 10, 1967. Decided June 5, 1967.
428 P.2d 462.

Michael J. Whalen (argued), Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, John Adams, Jr., County Atty., H. F. Hanser, Deputy County Atty., Billings, James R. Beck, Asst. Atty. Gen. (argued), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of assault in the second degree. The appellant, Fred Rollins, was charged with the crime of assault in the first degree; he was tried and the jury verdict resulted in the conviction from which he is appealing.

The incident giving rise to charges against the appellant occurred in the early morning hours of December 5, 1965. On the evening in question, Ray Earsley, his wife Nikki and the appellant's former wife Laurel Rollins were at the Rimrock Bar in Billings. The appellant was also at this bar the same evening. At about 2:00 a. m. Earsley, his wife, and Laurel Rollins left the bar and got into a car owned by Laurel Rollins. Upon pulling away from the curb, Ray Earsley, the driver, noticed that a rear tire had gone flat and stopped to investigate. He got out of the car and was standing at the right door when he first noticed appellant, who had pulled up in his car just prior to this. The appellant had a rifle in his hand when he got out of his car. He approached Ray Earsley and Laurel Rollins, who had gotten out of the car and was standing nearby. The appellant pointed the rifle at his ex-wife and told her to come

with him. Upon being told by Earsley to leave her alone, he walked over and hit him alongside the head with the rifle, knocking him to the ground. At this point there is some conflict in the testimony. Several witnesses stated that after Earsley was lying on the ground, the appellant shot him once through the neck. According to appellant, the rifle accidentally discharged when he struck Earsley with it across the cheek. Ray Earsley himself had only a dim recollection of the event.

After shooting Earsley the appellant turned on his ex-wife and pointed the rifle at her. He struck her with the butt of the rifle, knocking her down, and then stood over her pointing the rifle in her face. More shots were fired but fortunately no further injuries occurred. The appellant then left the scene in his car, and was later arrested in Wyoming. The rifle, admitted by the defendant to be the same one used, was found some four blocks distant.

There are three issues presented. First, whether testimony concerning the assault upon Laurel Rollins was properly admitted into evidence; second, whether a photograph showing Ray Earsley's wound was properly admitted; and finally, whether the court erred in giving an instruction relating to the credibility of witnesses.

The District Court permitted several witnesses to testify to the assault on appellant's ex-wife. As a general rule, evidence of a separate or collateral crime is not admissible. But an exception may occur when one criminal act is so closely related to the one upon which the charge is based as to form part of the "res gestae." In State v. Howard, 30 Mont. 518, 524, 77 P. 50, 52, this court said: "* * * If, while a person is engaged in the commission of one felony, he commits another, evidence of the commission of both is admissible as part of the *res gestae.*" See also State v. Tighe, 27 Mont. 327, 71 P. 3, in support of this rule. Although the concept of "res gestae" is sometimes abused in an attempt to rationalize the use of otherwise inadmissible evidence, we feel that testimony concerning the

attack on Laurel Rollins was properly received by the district court here. Appellant struck Laurel Rollins immediately after shooting Earsley; to separate these events in a reconstruction of the facts at trial would be extremely difficult as a practical matter. Moreover, the continuity of act and intent demonstrated by both assaults, coupled with the fact that appellant fired more shots after assaulting Earsley, greatly minimize the possibility that Earsley was shot "accidentally," as claimed by appellant. In passing on the question of criminal intent, the assault of Laurel Rollins was highly relevant.

The second issue is whether a color photograph taken of Earsley's wounds at the hospital was improperly shown to the jury. Appellant cites State v. Bischert, 131 Mont. 152, 308 P.2d 969, in support of the proposition that such evidence may not be used if intended to inflame the minds of the jury rather than enlighten them as to the facts. We affirm the rule of the Bischert decision but reject its application in this instance. In passing on the admissibility of such evidence, the court should weigh its probative value against its prejudicial effect. The photograph involved in Bischert was particularly distasteful and did not make a significant contribution to the development of facts in that case. The picture of Earsley here in question is not of that character, It was taken after the bullet wound had been cleaned and dressed. The reason offered by the State for its introduction was that it showed the presence of powder burns which were no longer visible at the time of trial. Such burns might corroborate appellant's version of the facts—that the gun discharged when Earsley was struck on the cheek with the weapon. It might even be argued that the photograph minimizes the severity of the wound inflicted. The trial judge should have latitude of discretion in passing on the admissibility of such evidence, and we cannot find any abuse of such discretion in this case.

The final issue, and the one of greatest concern to this court, is whether an instruction given on the credibility of witnesses

constituted reversible error. The instruction, or variations thereof, has enjoyed a long and dubious history in the case law of this state. It reads as follows:

"The Court instructs the jury that you are the sole judges of the credibility of the witnesses, and of the weight of their testimony. In determining the weight and credibility, you may take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to, or his or her feeling toward the defendant, the probability or improbability of his or her statements, as well as all the facts and circumstances given in evidence, and a witness false in one part of their testimony is to be distrusted in others, *except insofar as it may be corroborated by other and credible evidence in the case.*" (Emphasis supplied.)

The specification of error involves only the last part of the instruction, and in particular that portion which permits otherwise distrustful evidence to be "restored" to credibility by corroborating evidence.

Section 93-2001-1, subsection 3, provides that a jury may be instructed: "That a witness false in one part of his testimony is to be distrusted in others; * * *." It is interesting to note that Professor Wigmore in his treatise on evidence says, with reference to this very type of instruction: "The propriety of giving such an instruction is questionable; for it merely informs the jury of a truth of character which common experience has taught all of them long before they become jurymen." Wigmore on Evidence, Third Edition, Section 1010. Although we are inclined to agree with the professor, it is nevertheless true that the general form of the instruction is permitted under Montana statute.

The appended exception "* * * except insofar as it may be corroborated by other and credible evidence in the case," has never been approved by this court. The first case to disapprove of such an instruction is State v. Penna, 35 Mont. 535, 90 P. 787,

decided in 1907. The Penna case held that while the instruction was incorrect, it did not constitute sufficient error for reversal and was not prejudicial *per se*.

Another case taking a dim view of a similar instruction is State v. Belland, 59 Mont. 540, 197 P. 841, 844 (1921). At page 549 the court said: "It [the instruction] is essentially erroneous, and a like instruction has been condemned by this court so often that it seems inconceivable that the error could be repeated at this late day." If the day was late in 1921, it must certainly be so today.

In State v. Hogan, 100 Mont. 434, 49 P.2d 446, the giving of this type of instruction was finally held to be reversible error. The Hogan case involved a defendant convicted of four prior felonies; this fact was apparently argued by the county attorney to justify the use of the instruction, though admitted to be incorrect. There was also a reference made in the closing argument in the Hogan case to an alleged second robbery committed by the defendant. This second robbery had not previously been a part of the trial. Under the particular circumstances of the Hogan case, including the failure of the trial judge to order a stenographic record of closing argument, the instruction was given as one ground for reversal.

The most recent Montana decision on this issue is State v. Carns, 136 Mont. 126, 345 P.2d 735. The same type of instruction was condemned in that decision, but since the case was reversed on other grounds, statements in reference to the instruction were dicta. Appellant urges that the instruction is grounds for reversal in itself without a specific showing of prejudice. We cannot agree. The Hogan case did not go quite this far, but sought only to assure a fair trial to a defendant who had been clearly prejudiced on several accounts. If the Hogan decision suggests that such instruction is inherently prejudicial, we must here clearly reject such an interpretation.

In State v. Penna, supra, additional instructions were given the jury indicating that they were the sole judge of the credi-

bility of witnesses. The same is true in the instant case. In State v. Hay, 120 Mont. 573, 194 P.2d 232 in passing on the same type of instruction, this court held that mere technical error, without a showing of prejudice to the substantial rights of the parties, is not grounds for reversal.

While there is some conflict in testimony here, it is clear enough from the record that the appellant committed a grossly reprehensible assault. Considering the highly indiscreet use of a deadly weapon, appellant is fortunate that he was not found guilty, as charged, with first degree assault rather than second degree.

We simply cannot find any prejudice to appellant through the giving of the instruction, and refuse to reverse on what we consider to be a technical deviation from a statute of doubtful significance.

For the foregoing reasons, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON concur.