No. 13737

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CARTER BOUSLAUGH,

Defendant and Appellant.

---

Appeal from:   District Court of the Thirteenth Judicial
                  District,
               Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Moses, Tolliver and Wright, Billings, Montana
R. Allen Beck argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Mayo Ashley argued, Assistant Attorney General,
Helena, Montana
Harold F. Hanser, County Attorney, argued, Billings,
Montana
James Walen, Deputy County Attorney, argued,
Billings, Montana

---

Submitted:  January 26, 1978

Decided MAR 2 2 1978

Filed:  MAR ⠂ ⠂

_Thomas J. Kearney_
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

Defendant Carter Bouslaugh was charged in the District Court, Yellowstone County, with having committed the crime of aggravated assault on July 18, 1976, in violation of section 94-5-202(1)(b), R.C.M. 1947. Following a jury trial he was convicted and sentenced to serve 10 years in the Montana state prison. Defendant appeals the conviction.

The issues presented on appeal are:

1) Whether by refusing to include an offered instruction on misdemeanor assault, the trial court committed reversible error?

2) Whether by refusing an offered instruction pointing out that a shooting alone is not sufficient to obtain a conviction, the trial court committed reversible error?

3) Whether the trial court committed reversible error in refusing offered instructions dealing with specific intent and mens rea or criminal intent?

On July 18, 1976, at a motorcycle hillclimb south of Billings, Montana, defendant Carter Bouslaugh was involved in a fist fight which was precipitated by Don Maxwell who accused defendant of stealing his beer cooler. Following a short, one-sided fight between Maxwell and defendant, another fight broke out between Mike Donovan and defendant. After a five to fifteen minute fight, defendant retreated and attempted to get into his pickup. During this affray, defendant's glasses were knocked off and lost. At the time defendant tried to get into his pickup, he appeared to be tired and trying to avoid any further fighting.

- 2 -

When Bouslaugh reached his pickup and attempted to get inside, he was hindered by Mike Donovan who slammed defendant's leg in the door. Bouslaugh then got out of his pickup with a .44 magnum pistol in his hand. He shot it in the air and told everyone to leave him alone. This warning deterred Donovan who took off looking for cover. At this time Bouslaugh could still not leave the hillclimb site because other vehicles blocked his pickup truck. Bouslaugh then went to the rear of his vehicle where Ken Boulet and Kerry Loran and other spectators were located. As Bouslaugh approached, Kerry Loran told him to put his gun down. Bouslaugh pointed the gun at them and told them to back off.

Nevertheless, Loran stepped toward defendant who turned toward him, pointed the gun at him, and pushed it toward him. While pushing the gun toward Loran, the weapon discharged and the bullet struck Kerry Loran in the chest. Both the victim and Boulet testified that at this time they did not believe Bouslaugh was going to shoot anybody, since he had no reason for doing so.

After the victim was shot a group of men attacked Bouslaugh and took the gun from him. In the ensuing struggle three other shots were fired, one hitting a bystander in the arm.

Defendant contends he had no specific intent to assault Loran and the gun either accidently discharged, or discharged due to Bouslaugh's negligence. It is a fundamental rule that the court's instructions should cover every issue or theory having support in the evidence. State v. Thomas, 147 Mont. 325, 413 P.2d 315. Here, defendant was charged with aggravated assault in violation of section 94-5-202, R.C.M. 1947, which provides:

"A person commits the offense of aggravated assault if he purposely or knowingly causes:

"* * *

"(b) Bodily injury to another with a weapon."

The District Court refused to give a lesser included offense instruction of misdemeanor assault. Under section 94-5-201, R.C.M. 1947:

"(1) A person commits the offense of assault if he:

" * * *

"(b) negligently causes bodily injury to another with a weapon * * *."

The difference between aggravated assault and the lesser included offense of misdemeanor assault is the intent of defendant at the time the crime was committed. From a review of the record, it becomes readily apparent there was ample evidence to put into question whether the defendant knowingly or purposely shot the victim, or negligently shot the victim.

Montana's standard for determining whether there has been sufficient evidence as to a theory introduced to warrant the granting of an instruction is set forth in State v. Buckley, (1976), _____Mont._____, 557 P.2d 283, 33 St. Rep. 1204, 1207:

"* * * the district court's instructions must cover every issue or theory having support in the evidence, and the inquiry of the district court must only be whether or not any evidence exists in the record to warrant an instruction on mitigated deliberate homicide."

This is the standard to be used when dealing with all lesser included instructions, regardless of the offense.

The United States Supreme Court in Keeble v. United States, (1973), 412 U.S. 205, 93 S.Ct. 1993, 36 L ed 2d 844, said that the defendant is entitled to instructions on a lesser included offense, if evidence would permit the jury rationally to find him guilty of the lesser offense and acquit him of the greater.

- 4 -

In the case before us the record is replete with such evidence. The transcript shows the victim Kerry Loran, at the time of the shooting,did not believe defendant was going to shoot him. There was also testimony given by various expert witnesses as to defendant's vision without his glasses, i.e., without his glasses Bouslaugh's vision was 40/400 or legally blind. Other spectators testified that defendant had been beaten up substantially and he seemed unstable at the time he came from the pickup with the gun. It is clear from the evidence a reasonable inference may be drawn that defendant accidently or negligently shot the victim and therefore it was prejudicial error to refuse to give the jury an instruction on misdemeanor assault.

The state contends the crime committed was either aggravated assault or no crime at all. In State v. Baugh, (1977), _____ Mont. _____, 571 P.2d 779, 34 St.Rep. 1315, 1318, the defendant was convicted of deliberate homicide. Defendant argued he was prejudiced by the trial court's refusal to give a lesser included instruction on mitigated deliberate homicide. In Baugh there was no evidence of any factors tending to instigation and this Court held:

> "' * * * In many instances, however, the evidence is such as to show that the defendant is either guilty of the offense charged or is entitled to an acquittal. In such cases the court may not be put in error for refusing or failing to instruct as to the lower degree of the included offense.'" 571 P.2d 781.

See also: State v. McDonald, (1915), 51 Mont. 1, 16, 149 P. 279.

From our record the jury could have found, had it been properly instructed, that defendant was guilty of the lesser included offense of misdemeanor assault. The record indicates:

1) The gun went off while defendant was in the middle of a sentence.

2) Defendant, who lost his glasses early in the fight, is legally blind without them.

3) Defendant by firing the gun in the air demonstrated no intent to harm anyone.

4) None of the many witnesses could testify they thought defendant intended to shoot the victim.

5) Defendant appeared tired and unstable.

6) Defendant told everyone around him to stay away.

7) Dr. Trunnel testified that due to defendant's mental make-up, confusion caused by the fight, and his almost total loss of vision without his glasses, he would suffer a decompensation function, which means defendant would be very upset and confused.

The judgment of the trial court is reversed and the sentence is vacated. The cause is remanded for a new trial, consistent with this opinion.

_____
                    Justice


We Concur:

_____
Chief Justice.


_____
_____
Justices.

- 6 -

Mr. Justice John C. Harrison dissenting:

I dissent.

The testimony that the witness was not afraid that the appellant would shoot him should have been rejected. The witness's state of mind was neither material to the crime with which appellant was charged, nor relevant to the jury's determination whether the weapon was exhibited in a threatening manner. The purpose of the statute is to make punishable acts that endanger or are likely to endanger other persons without any specific intent to do so. Whether or not he drew the weapon for self-defense was a fact question to be determined by the jury and here they found contra to the appellant's contentions and in my opinion we are bound by their finding. I would affirm the conviction.

_____
Justice

- 7 -