No. 82-149

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIAM J. GRAY,

Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
In and for the County of Lake
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

John R. Frederick, Polson, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard P. Heinz, County Attorney, Polson, Montana

---

Submitted on briefs: October 26, 1982

Decided: February 14, 1983

Filed: FEB 14 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant William J. Gray was convicted of negligent arson, a misdemeanor, following a jury trial in the District Court of the Fourth Judicial District, Lake County. Gray was sentenced to six months in the county jail and fined $500. Gray appeals. We affirm the District Court.

The following issues are presented for review:

1. Was the grapho analyst's testimony, as to defendant's mental state, properly excluded.

2. Did the admission into evidence of State's Exhibit No. 4 deprive defendant of a fair trial.

3. Did the trial court's instruction on the lesser included offense of negligent arson constitute reversible error.

4. Did the trial court abuse its discretion in imposing the sentence.

5. Did the trial court's reason for imposition of the sentence manifest judicial vindictiveness.

On the evening of June 17, 1981, Gray, who had been living in Phoenix, Arizona, arrived in Polson at the house where his wife, Phyllis, was residing. The house, which Gray built, was jointly owned by him and his wife.

Gray and his wife had been living apart for about a year because of marital problems. The purpose of Gray's visit to Polson to deliver the couple's ten year old son to the wife. Phyllis allowed her husband to spend the night in the house.

Gray had asked for a sleeping pill which he was given. He was also drinking brandy. Gray began unloading his car which was parked in the attached garage. Phyllis noticed the car was running and informed Gray that she was going to turn the car off. Gray grabbed the keys from the ignition before his wife could get them. The garage door was closed

and Gray had placed a small log on the gas pedal to keep the car running.

About midnight, Phyllis went to bed. She could still hear noises coming from the garage. About 1:30 a.m. she was awakened by the smell of smoke. She went into the garage and found Gray lying on his back on the floor and a fire in a pile of logs near the car. She shook Gray but received no response. She returned to the house where she telephoned her father who lives nearby. When she returned to the garage, Gray was walking around. She opened the garage door and he drove the car outside. Her father arrived with a fire extinguisher and was able to extinguish the fire before the fire department arrived. The father testified that when he arrived at the scene of the fire, he found carpets, rubber, canvas, and logs on fire, with paint cans, propane bottles, a fuel oil can, and trash on the garage floor. The paint cans had been broken open. The fire had nearly gone through the sheet rock ceiling.

The jury found Gray guilty of negligent arson, a misdemeanor. Section 45-6-102, MCA, provides:

> "A person commits the offense of negligent arson
> if he purposely or knowingly starts a fire or
> causes an explosion, whether on his own property
> or property of another, and thereby negligently:
> . . . (b) places property of another in danger
> of damage or destruction."

During the trial, defense witnesses included a psychiatrist who testified as to Gray's mental state. In addition, the defense called a grapho analyst, Mrs. Maddox, to testify as to Gray's mental state. During testimony in chambers, Mrs. Maddox analyzed a writing made by Gray just before he left Phoenix and one made within a month after the fire. Mrs. Maddox testified that a handwriting analyst compares "a number of features in writing, such as analysis of angles, pressure, and slant, variations in stroke, to make determinations of that personality, state of mind, comparison of

-3-

various documents." Mrs. Maddox first testified as to

Gray's general personality characteristics:

> "What I found is that Bill Gray, as a per-
> sonality, is the kind of gentleman who
> has a great deal of trouble in finding
> in other people what he might happen to
> be feeling. He's the sort of person who
> feels that I'm a grown man, I have to deal
> with this. I can't put it off onto someone
> else. It's not their problem. It's my
> problem. I created the mess. I have to
> solve it, and the other thing that was
> consistent throughout all of this time
> is that there is a great deal of sensitivity
> in this gentleman. He is very sensitive
> to hurts from other people. He's very
> hurting emotionally. The writing that I
> saw just prior was verified by Mr. Tom
> Habne, Mr. Gray's attorney from Phoenix,
> to have been written just prior to his
> leaving Phoenix, seemed quite logical.
> He was at this time discussing some
> divorce items, and his writing at that
> time showed a lot of self control, a lot
> of logic in the way he was approaching
> things.
>
> "The next sample that I saw was dated sometime
> in August after the event for which Mr. Gray
> has been charged, and at that time his writing
> showed a lot of emotional fluctuation. I feel
> that inbetween those two times something snapped,
> something was not according to the usual pattern,
> because the writing in August shows a lot of
> emotional variation. His writing goes from
> being sensitive to being withdrawn to being
> very euphoric to being very depressed, a very
> unstable kind of writing."

Mrs. Maddox was then questioned as to his state of mind at

the time of the fire to which she responded:

> "It's very hard for me to be specific about
> the time of the fire, as the writing I saw
> was dated sometime just before he left
> Phoenix, and then, like I say, within a
> month after the fire. All I can say is
> that there is a drastic change in there
> precipitated by what, I don't know, but
> the potential for him to act out all these
> feelings was there prior to his leaving
> Phoenix, but what precipitated the acting
> out of those feelings, I would not be able
> to even presume from the handwriting."

Her testimony was excluded from the jury.

The State argues that Mrs. Maddox's testimony was not relevant. We agree. Gray's state of mind the night he set the fire is at issue. Negligent arson requires a defendant to purposely or knowingly start a fire. 45-6-102, MCA. Mrs. Maddox's testimony did not deal with an analysis of writing made by Gray on the evening of the fire. She was unable to testify as to Gray's mental state on the night of the fire. Her testimony was not relevant. Evidence which is not relevant is not admissible. Rule 402, Mont. R. Evid. The District Court properly excluded the testimony of the hand-writing analyst.

Gray, in his second issue, contends that the admission of a note, State Exhibit No.4, into evidence was so inflammatory that its natural tendency was to prejudice the jury and deprive him of a fair trial. The note from Gray to his wife was left on her bed on December 19, 1980. The note read:

> "Phyllis. Please get ready for bed and come to the basement where I am at and be with me tonight. Tonight I need you with me for the last time ever. Bill."

The trial judge has a latitude of discretion in passing on the admissibility of evidence. State v. Pendergrass (1978), 179 Mont 106, 112, 586 P.2d 691, 694; State v. Rollins (1967), 149 Mont. 481, 484, 428 P.2d 462, 464. Even if evidence is improperly admitted, there is reversable error only if the defendant is prejudiced. State v. Paulson (1975), 167 Mont. 310,315, 538 P.2d 339, 342; State v. Kuilman (1941), 111 Mont. 459, 462, 110 P.2d 969, 970.

> "The test of prejudicial error requiring reversal is this: Is there a reasonable possibility that the inadmissable evidence might have contributed to the conviction?" State v. Langan (1968), 151 Mont. 558, 568, 445 P.2d 565, 570.

We fail to see how the note could have been so inflam-matory as to prejudice the jury and deprive Gray of a fair trial. We find that the note could not have reasonably contributed to the jury verdict.

The third issue presented by Gray alleges error because of the jury instruction of a lesser included offense. Gray was charged with deliberate arson. Section 45-6-103(1), MCA, provides:

> "A person commits the offense of arson when, by means of fire or explosives, he knowingly or purposely: (a) damages or destroys an occupied structure which is property of another without consent; or (b) places another person in danger of death or bodily injury."

At the conclusion of the defense, the State requested an instruction on negligent arson.

Gray was found guilty on the negligent arson instruction. He contends that the inclusion of the lesser included offense instruction resulted in unfair surprise as he only presented a defense for deliberate arson.

Gray relies on State v. Bashor (1980) ____Mont.____, 614 P.2d 470, 37 St.Rep. 1098, where defense counsel objected to a State offered instruction on a lesser included offense. The State withdrew the instruction. The defendant then appealed the court's failure to give the included offense instruction. This Court refused to consider the appeal because the defendant not only failed to offer the instruction but also objected to the instruction when it was offered by the State.

In the present case, the included offense instruction was offered by the State and given by the court. Gray contends that it was error for the court to give the included offense instruction over his objection. Section 46-16-603(3) provides:

> "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

This Court has held that an instruction of an included offense is required where there is some evidence to support the lesser offense. State v. Gopher (1981), ____Mont.____, 633 P.2d 1195, 1197, 38 St.Rep. 1521, 1524; State v. Hamilton (1980),____ Mont.____, 605 P.2d 1121, 1129, 37 St.Rep. 70, 77.

> "Montana's standard for determining whether there has been sufficient evidence as to a theory introduced to warrant the granting of an instruction is set forth in State v. Buckley (1976), Mont.,557 P.2d 283, 33 St.Rep. 1204, 1207:
>
> "' . . . the district court's instructions must cover every issue or theory having support in the evidence, and the inquiry of the district court must only be whether or not any evidence exists in the record to warrant an instruction on mitigated deliberate homicide.'
>
> "This is the standard to be used when dealing with all lesser included instructions, regardless of the offense." State v. Bouslaugh (1978), 176 Mont. 78, 81, 576 P.2d 261, 263.

At trial evidence was presented to support negligent arson as well as deliberate arson. The State moved for inclusion of a negligent arson instruction. The jury found that there was evidence to support the negligent arson instruction. Montana case law and statute provide that a defendant can be found guilty of an included offense. Gray could not have been unfairly surprised when he himself presented evidence to support the negligent arson instruction. The District Court acted properly in including an instruction on the included offense of negligent arson.

The fourth issue raised by Gray is that the sentence imposed by the District Court was an abuse of discretion. "This Court has consistently held that if a sentence is within the limits provided by statute, it is not an abuse of discretion." State v. Garrido (1981),___Mont.____, 621 P.2d 1105, 1108, 38 St.Rep. 78, 80.

Section 45-6-102(2), MCA, provides:

> "A person convicted of the offense of negligent arson shall be fined not to exceed $500 or be imprisoned in the county jail for any term not to exceed 6 months, or both."

The District Court in sentencing Gray provided:

> "THE COURT ORDERS that the Defendant be punished by confinement in the Lake County Jail for a term of six (6) months and fined the sum of Five Hundred Dollars ($500.00).

> "THE COURT ANNOUNCES the reason for the sentence to be that the action of the Defendant constituted a deliberate action under the circumstances stated in the trial for which the Defendant should be punished."

The sentence is within the limits imposed by the statute and, therefore, not an abuse of discretion.

The last issue raised is that the sentence imposed indicates judicial vindictiveness. Defense counsel argues that because the defendant is a 38 year old man employed as a school teacher and a captain in the army reserves with no criminal record of any type, the giving of the maximum sentence indicates judicial vindictiveness. There is an absence of any statement or other evidence to indicate vindictiveness towards the defendant on the part of the sentencing judge. We find it improper for defense counsel to have suggested the presence of judicial vindictiveness without evidence to support the claim and we summarily dismiss the issue.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

-8-

Mr. Justice Daniel J. Shea, concurring in part and dissenting in part:

I would affirm the judgment but I would vacate the sentence and remand for resentencing. Defendant was charged with deliberate arson, a felony, but the jury convicted him only of a lesser-included offense, negligent arson, a misdemeanor. Each of the charges requires a deliberate act of setting the fire. But felony arson requires that the defendant intended by setting the fire to cause the resulting harm. Misdemeanor arson, on the other hand, requires only that by an intentional setting of the fire the defendant negligently placed "property of another in danger of damage or destruction." The jury, by finding defendant guilty of negligent arson, found that he negligently placed the property of another in danger of damage or destruction, and therefore that he did not intentionally cause the resulting harm.

The sentence of the District Court is unclear as to whether he was sentencing defendant only for deliberately setting the fire or for deliberately causing the damage resulting from the fire he deliberately set. This lack of clarity results in the possibility that defendant may in essence have been punished the maximum for the misdemeanor because the sentencing court believed the defendant had actually committed the felony rather than the misdemeanor. If this is so, this is an impermissible basis for imposing the maximum sentence--even though it is within the maximum permitted by statute for the misdemeanor conviction. This is yet another reason why I cannot abide by the bland statement of the majority that a sentence is not an abuse of discretion if it is within the limits provided by the statute. Such a

9

statement gives absolute discretion to the trial court--and that is simply a euphemism for unrestrained discretion.

Daniel J. Shea
Justice