No. 84-40

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA
        Plaintiff and Respondent,

-vs-

DOUGLAS JOSEPH DOLL,
        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula
                The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John E. Riddiough argued, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Pat Schaeffer argued, Ass't Attorney General, Helena,
        Montana
        Edward McLean argued, Deputy County Attorney, Missoula,
        Montana

                            Submitted: October 30, 1984

                            Decided: January 3, 1985

Filed: JAN 3 - 1985

_Ethel M. Harrison_
_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court

Douglas Joseph Doll appeals from a conviction of deliberate homicide following a jury trial in the District Court of Missoula County. The District Court sentenced him to life plus ten years imprisonment without possibility of parole. The defendant was designated a dangerous offender.

The defendant was charged with deliberate homicide of his wife, Trudy Doll, on April 2, 1983. He married Trudy Doll in 1977. They had two children. The defendant and Trudy had been residing in Glendive for several years. Prescott Nelson and his wife were friends of the defendant and Trudy when they resided in Glendive. The four became intimate. Their relationship included incidents of wife swapping. In February of 1983, Trudy left the defendant and moved to Missoula with the children. She filed for a divorce in March. Later that month Trudy learned that the defendant was coming to Missoula. Trudy told a friend, Barbara Griess, that Doug was coming and she did not want to be alone while the defendant was in Missoula. Trudy made arrangements to stay with Betty. The defendant made arrangements to stay in a friend's apartment while he was in Missoula. The apartment was in the same building, one floor above the apartment in which Betty lived. At Trudy's request, all of the guns in the apartment were taken out and hidden in Betty's apartment. The defendant arrived in Missoula on Thursday, March 31.

On April 2, the defendant was at Trudy's apartment. The defendant and Trudy talked for awhile and then she went downstairs to a friend's apartment. A short time later, the defendant asked Trudy to come upstairs to talk to him and they went up together. Betty testified to hearing sounds of

a struggle. She ran up the stairs and heard Trudy scream. Betty tried to get in but the door was locked. She ran downstairs and called the police. She made a couple of more trips upstairs in an effort to open the door to get the children out. She heard their child state that his mom and dad were dead. Betty opened the door and sent the children downstairs. She saw Trudy lying on the floor, bloodied and unconscious. The defendant was lying next to her with a knife in his chest. She left the apartment, closing the door behind her. Officer Morman was the first officer to arrive at the scene. He had to force his way into the apartment, which apparently had been locked by the defendant after Betty left.

Trudy Doll was dead at the scene. She suffered a total of twenty-one stab wounds. There were two wounds to the heart and six to the left lung, any one of which would have been fatal. Three ribs were fractured by blows to the chest, and in addition a stab wound to the face fractured a facial bone. Defensive stab wounds were found on the victim's wrist and arm. The defendant had four self-inflicted stab wounds to the chest and a self-inflicted stab wound to the neck which severed the carotid artery. He was hospitalized for thirty days.

Dr. Herman Walters and Dr. William Statford testified to the defendant's mental capacity. Both concurred that the defendant had the capacity to have acted purposely and knowingly at the time the act was committed. Further, both stated that the defendant was not under the influence of extreme emotional stress.

Before the trial, the State filed a notice pursuant to State v. Just (1980), 184 Mont. 622, 602 P.2d 957, that it

262

3

intended to introduce evidence of other crimes committed by the defendant. The court originally ruled in its pretrial opinion that evidence of other crimes more than three years and seven months is too remote in time to be admissible. During the course of the trial, the court reversed its previous ruling and allowed the State to introduce evidence of assaults committed by the defendant on his first wife eight years prior to the homicide.

During the noon recess of one of the days of trial, the defendant wrote a note to a witness in the case. The note was handed to a law enforcement officer, who then gave it to the prosecutor. The note was offered by the State to impeach that witness and was repeatedly referred to by the State in its closing argument.

The District Court also admitted photographs of the scene of the crime and of the wounds inflicted on the victim. Testimony by the defendant's father as to the defendant's personal background was also allowed.

The following issues are raised on appeal:

(1) Whether the District Court erred in admitting evidence of an assault by the defendant upon his first wife eight years previous to the offense charged.

(2) Whether the District Court erred in allowing State's exhibit 17, a note written in jail by the defendant to be admitted into evidence.

(3) Whether the District Court erred in admitting photographs and slides of the victim at the scene of the crime and at the autopsy.

(4) Whether the District Court abused its sentencing discretion in ordering that the defendant be ineligible for parole or furlough for the rest of his life.

4

(5) Whether the District Court erred in admitting certain testimony concerning defendant's personal background.

Defendant objects to the introduction of "other crimes or act" evidence against him at trial. Specifically, the defendant claims the testimony of Janice Irvine was contrary to Rule 404(b) of the Montana Rules of Evidence. Janice Irvine testified that she was married to the defendant in April of 1972. On March 6, 1975, she informed the defendant of her intention to obtain a divorce. She stated that on March 13, 1975, the defendant entered her apartment with a rifle and threatened to kill her and himself. On March 17, 1975, when she returned to her apartment with two other people to move her belongings, the defendant held her at knife-point. She was able to convince him to let the other people go. When the police and defendant's father arrived, defendant held a knife at her stomach and instructed her to tell the authorities that everything was all right. During this incident, he stated to her that he was upset about the divorce, that he did not want to be divorced and that if he couldn't have her then no one could.

In Montana, the test for admission of evidence of other crimes, wrongs or acts is codified in Rule 404(b), Montana Rules of Evidence:

> "(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Several Montana cases govern the admissibility of other crimes. In State v. Stroud (Mont. 1984), ____ P.2d ____, 41

St.Rep. 919, we defined the substantive and procedural guidelines of Rule 404(b), Montana Rules of Evidence:

> "The four substantive requirements are (1) similarity between the crime charged and the previous crimes, wrongs or acts; (2) nearness in time between the charged crime and the previous crimes, wrongs or acts; (3) tendency to establish a common scheme, plan or system; and (4) determination that the probative value of the evidence is not substantially outweighed by the prejudice to the defendant. Jensen, supra, 153 Mont. at 239, 455 P.2d at 634 and Rule 403, Mont.R.Evid. In addition, three procedural guidelines must be followed: (1) notice to the defendant prior to trial that evidence of other crimes, wrongs or acts will be introduced; (2) an admonition by the judge to the jury when the evidence is introduced that it is admitted solely for one or more of the accepted purposes stated in Rule 404(b); and (3) a cautionary jury instruction to the same effect, providing in unequivocal terms that the evidence is admitted for the purpose earlier stated and not to try and convict the defendant for prior wrongful conduct. Just, supra, 184 Mont. at 274, 602 P.2d at 963-64."

The District Court initially granted the defendant's motion to exclude evidence of defendant's prior assaults. During the course of the trial, however, it reversed its previous ruling and admitted Janice Irvine's testimony. Defendant contends the admission of Janice Irvine's testimony was improper because it involved an incident eight years previous to the homicide. This Court addressed the concept of remoteness in State v. Heine (1975), 169 Mont. 24, 35, 544 P.2d 1212, where we allowed the admission of evidence of assaults three years earlier. Also see State v. Nicks (1958), 134 Mont. 341, 332 P.2d 904. But in State v. Jensen (1969), 153 Mont. 233, 455 P.2d 631, we stated proof of acts committed three years and seven months prior to the crime

6

charged is not so remote that its relevancy is thereby diluted.

Whether evidence of prior crimes is too remote is directed to the discretion of the District Court and is a matter that goes to the credibility of the evidence rather than its admissibility, unless the remoteness is so great that the proferred evidence has no value. State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343. The record reflects careful consideration by the trial court of Rule 404(b), Mont.R.Evid. The trial court methodically adhered to the substantive and procedural requirements set forth in Stroud. However, the trial court's reversal of its previous ruling three days into the State's case-in-chief was an abuse of discretion. We hold this decision was prejudicial to the defendant and is cause for reversal.

The State argues that if error is found in the admission of Janice Irvine's testimony, at best it constitutes harmless error. The State's position is that Irvine's testimony could not have contributed to the conviction of deliberate homicide. The State claims that overwhelming evidence proved lack of extreme mental or emotional stress, a necessary element of mitigated deliberate homicide. The evidence included numerous affairs during the marriage, incidents of wife-swapping and the testimony of Dr. Stratford, a psychiatrist and Dr. Walters, a psychologist, both who testified that the defendant was not acting under the influence of extreme emotional stress at the time of the homicide.

The due process clause of the United States Constitution forbids fundamental unfairness in the use of evidence. Blackburn v. Alabama (1960), 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242. The prejudice in this case is found in that the

defendant was assured that evidence of other crimes would not be admitted. The defendant relied on the trial court's initial order precluding Janice Irvine's testimony. Moreover, the defendant lost his opportunity to voir dire the jury regarding the effect evidence of prior crimes would have on their decision. Had the trial court ruled in its pretrial order that the testimony of Janice Irvine was admissible, the defendant could have prepared in order to lessen the impact of such testimony and also voir dired the jury on the effect of such evidence. The trial court's ruling may have denied the defendant a trial by a fair and impartial jury as guaranteed by Amendment VI of the United States Constitution. The purpose of pretrial orders is to prevent surprise and permit counsel to prepare their case for trial on the basis of the pretrial order. Workman v. McIntyre Construction Co. (Mont. 1980), 617 P.2d 1281, 37 St.Rep. 1637. The counsel of both parties relied on the trial court's order. However, upon the persistent urging of the State, the trial court reversed this ruling and allowed the State to introduce evidence of assaults committed by the defendant. As a result, the defendant suffered prejudice.

Defendant contends the court's admission of the letter was clear error. Kimberly Aspenlieder was a witness called by the State. She testified she met the defendant two or three weeks before the homicide and spent a lot of time with him. She claimed their relationship was not a romantic one. At the noon recess following the testimony of Kim Aspenlieder, the defendant handed a note to a deputy. The defendant requested that the note be given to Kim Aspenlieder. He also told the deputy that he assumed the deputy "would have to read it" before delivering the note.

8

The deputy read the note and turned it over to the prosecution. The State offered the letter to impeach Kim Aspenlieder. The letter evidenced a romantic attachment between the witness and the defendant. Defense counsel argued the letter was a statement of the defendant of which counsel was not given notice and that the letter was highly prejudicial and not probative. The trial court admitted the letter.

The defendant also claims it was unlawful for the State to seize a letter written by a defendant in custody for the purpose of introducing the letter as evidence against a defendant on the charge for which he is in custody. In support of his argument defendant cites State v. Sheriff (Mont. 1980), 619 P.2d 181, 37 St.Rep. 1793. In Sheriff, the defendant challenged the practice within prisons for jail officials to read all incoming and outgoing mail of prisoners. We adopted the rule established by the United States Supreme Court in Procunier v. Martinez (1974), 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224, also Palmigiano v. Travisono (D.R.I. 1970), 317 F.Supp 776, and condemned the practice on both First Amendment, the right to freedom of speech, and Fourth Amendment grounds. The rule of Sheriff does not control this case. In the present matter, the defendant voluntarily handed an unsealed note to the deputy. The contents of the note were visible. The note was not placed in U.S. mail. As a result we find no search occurred. The letter was properly offered to impeach the witness. We find the trial court did not err in admitting the letter.

The defendant next claims error in the District Court's admission of photographs and slides of the victim. The photographs displayed wounds of the face, chest and arms

9

taken at the scene of the crime and autopsy. The defendant objected to these photographs prior to the trial by motion in limine. The defendant argues the use of the photographs inflamed and prejudiced the jury. The prejudicial effect of these photographs was described by defendant as gruesome, grotesque and shocking to the emotions of the jury members. The defendant claims the photographs were cumulative and far more prejudicial than probative, citing Rule 403, Mont.R.Evid.; State v. Azure (1979), 181 Mont. 47, 591 P.2d 1125; State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462. We do not find error here.

Rule 403, Mont.R.Evid. states:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The key element of this rule is the discretion of the trial judge in deciding whether otherwise relevant evidence is to be excluded because of the factors listed in the rule, mainly the factor of unfair prejudice. In State v. Austad (Mont. 1982), 641 P.2d 1373, 39 St.Rep. 356, we strongly upheld the longstanding rule in Montana that it is within the discretion of the trial court to allow into evidence duly verified photographs to aid the jury in its fact finding process. Also see State v. Hoffman (Mont. 1982), 639 P.2d 507, 39 St.Rep. 79; Fulton v. Chouteau County Farmer's Co. (1934), 98 Mont. 48, 37 P.2d 1025.

The trial court exercised its discretion cautiously. The record shows forty slides were rejected and fifteen admitted. Of the fifteen slides, only six depicted the

wounds of the victim. The pathologist testified that the diagrams were not an accurate representation of the proportion of the wounds in relation to the body, and that for exact accuracy the slides were necessary. The slides were used by the pathologist during his testimony. We hold the slides were essential in establishing the cause of death.

The present case is directly on point with State v. Riley (Mont. 1982), 649 P.2d 1273, 39 St.Rep. 1491. There, the defendant objected to the admission of photographs of the victim's body. The court found the pictures accurately represented the victim's appearance at the autopsy and were reasonably necessary to depict the multiplicity and the extent of the injuries, how they were caused, and their age. On similar grounds, we hold the pictures taken by the pathologist at the autopsy related to the charge against the defendant and were properly admitted as part of the corpus delicti.

Likewise, the photographs of the crime scene used during the examination of Deputy Peterson were properly admitted in evidence. The probative value of the photo of the victim was not outweighed by its allegedly inflammatory nature. The photo was admissible because it lent credence to the testimony of Deputy Peterson who testified that the photographs depicted the scene as it appeared when he arrived. State v. Woods (Mont. 1983), 662 P.2d 579, 40 St.Rep. 533. The State, as the prosecutor, had the burden of proving all of the elements of the offense beyond a reasonable doubt. The introduction of the photographs was a permissible means of meeting that burden as to the commission of the crime and the cause of death.

This Court is well aware that these photographs depict the brutality and viciousness of the crime. However, we do not believe the photographs would arouse prejudice to a point that probative evidence must be excluded. In this era of modern media where nightly newscasts focus on victims of gang slayings, the starving of impoverished nations and motion pictures infatuate the young with bloodied bodies, we must acknowledge that our system has become immune from the shock of such scenes. We will not demand that a trial be sanitized to the point that important and probative evidence must be excluded.

In considering defendant's final issue, we find there was no abuse of discretion by the trial court in admitting the testimony of the defendant's father. The defendant objected to the admission of Joseph Doll's testimony on the ground that this testimony was character evidence which is improper in the State's case-in-chief under Rule 404(a)(1), Mont.R.Evid.

Rule 404(a)(1), Mont.R.Evid., provides:

> "(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> "(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same."

The State contends the testimony was not offered as evidence to prove a character trait of the defendant. The father merely testified about the defendant's childhood, marital history and education level. The record reveals the trial court specifically instructed the State to exclude any discussion regarding the defendant's temper or previous acts

12

of violence or character trait. Following a review of the transcript, we find Joseph Doll's testimony was in no way prejudicial to defendant.

The defendant further objected to the admission of testimony by Corrine Nelson and Prescott Nelson. Corrine Nelson's testimony concerned an extra-marital affair she had with defendant previous to the homicide. Prescott Nelson testified to the incidents of wife swapping between them and the defendant's dating of other women during his separation from Trudy. The defendant contends all of this testimony was character evidence. The State advances that evidence of defendant's past intimacies was highly relevant to the defendant's claim that he killed Trudy in the heat of passion upon learning of her affair with Prescott Nelson. The State argues this evidence clearly negates defendant's claim of mitigation. The testimony of Corrine and Prescott Nelson was properly admitted.

Dr. Stratford rendered his expert medical opinion regarding defendant's state of mind at the time of the homicide. He testified that, in his opinion, the defendant did have the capacity to act purposely and knowingly and was not suffering from a mental disease or defect that would render him incapable of being aware or acting purposely, although he did have some mental defects in terms of deficits of intelligence. Again the defendant claims such testimony was character evidence. The State submits the defendant's state of mind was an element of the offense charged. The testimony was not offered to reveal the defendant's lack of intelligence, but rather it was a professional opinion concerning the defendant's state of mind at the time of the offense. Moreover, Dr. Stratford was an expert witness. Rule 702,

13

Mont.R.Evid. permits testimony by experts. Dr. Stratford's testimony constituted a professional opinion and not character evidence. We find the testimony was properly admitted.

The district judge sentenced defendant to life imprisonment plus ten years under the enhancement statute, to be served without eligibility for parole or furlough pursuant to section 46-18-202(2), MCA. Defendant contends on appeal that the trial court abused its discretion. In view of our reversal of the defendant's conviction, this issue need not be considered.

For the above reasons, we reverse the defendant's conviction. The defendant is granted a new trial in a manner consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Honorable Gordon R. Bennett,
District Judge, sitting in place
of Mr. Justice L. C. Gulbrandson

Mr. Justice John C. Sheehy, specially concurring:

I concur in the result.

_____
Justice

14